[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Ormonde Ricketts appeals from a judgment of the Clark County Court of Common Pleas, which granted Polly Ricketts' complaint for divorce, disbursed the parties' separate property, and distributed the marital property.
The Ricketts were married on March 17, 1984. No children were born of the marriage. On July 26, 1995, Mrs. Ricketts filed a complaint for divorce. In September 1995, Mr. Ricketts was ordered by a magistrate to vacate the marital residence located at 1305 Sylvan Shores Drive, South Vienna, Ohio. Following a hearing that occurred over the course of several months, the trial court entered a divorce decree on July 7, 1997. Mr. Ricketts filed a notice of appeal, and he raises four assignments of error challenging several aspects of the trial court's division of property. We will address the assignments in the order that facilitates resolution.
 II. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT FOUND THAT THE RENTAL PROPERTIES WERE POLLY'S SEPARATE PROPERTY, BECAUSE THE EVIDENCE SHOWED THAT THE FUNDS USED TO PURCHASE THOSE PROPERTIES WERE NOT TRACEABLE TO HER PRE-MARITAL SEPARATE PROPERTY.
Mr. Ricketts insists that the trial court should have determined that the rental properties were marital property subject to division because "virtually all of the mortgage payments and all the repair bills on those properties were made from the couple's joint checking account" and because he had performed maintenance work on the properties and had assisted in finding tenants.
The trial court has broad discretion to divide property in domestic relations cases, and its decision will not be disrupted on appeal absent unreasonable, arbitrary, or unconscionable conduct. Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401, citing Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131; Martinv. Martin (1985), 18 Ohio St.3d 292, 294-295; Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219; Berish v. Berish (1982),69 Ohio St.2d 318, 319. "If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." Middendorf, 82 Ohio St.3d at 401.
In divorce proceedings, a domestic relations court must distinguish marital property from separate property, make an equitable distribution of the marital property, and disburse each spouse's separate property to that spouse. R.C. 3105.171(B), (C), and (D). Marital property includes all real and personal property interests — ownership or otherwise — of either or both spouses acquired during the marriage, income and appreciation on separate property arising during the marriage from the labor, monetary, or in-kind contributions of either or both spouses, and participant accounts in state and municipal deferred compensation plans to the extent allowed under the statute. R.C. 3105.171(A)(3)(a). Separate property is defined at R.C. 3105.171(A)(6)(a):
 "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
* * *
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
* * *
 (vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;
 (vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
Separate property does not become marital by commingling with other property except when the separate property is not traceable. R.C. 3105.171(A)(6)(b). Traceability is the focus in determining whether separate property has lost its character after commingling with marital property. Peck v. Peck (1994), 96 Ohio App.3d 731,734.
In this case, the trial court found that Mr. Ricketts had entered the marriage owning or having an interest in the Sylvan Shores property and that Mrs. Ricketts had entered the marriage owning or having an interest in five encumbered rental properties: 1436-1438 Catherine;1516-1518 Greenfield; 1701-1703 Mansfield; 1185 Delta; and 575 Catherine. The trial court determined that Mrs. Ricketts had made the following real estate transactions during the marriage:
 October 1988 Sold the Delta Road property, earning proceeds of $10,120.50, $9,938 of which was used to purchase 1124 Mulberry.
 December 1989 Purchased 502 East Rose for $10,444. 90 and assumed an existing mortgage. According to Mrs. Ricketts's trial testimony, $1,800 of the $2,000 down payment came from her premarital City Loan account.
 1990 Refinanced the Greenfield property, using the proceeds to purchase 6.288 years in the State Teachers Retirement System ("STRS") that, prior to marriage, Mr. Ricketts had earned the right to purchase.
 June 1991 Purchased 2301+ Columbus Avenue for $20,160.79. According to Mrs. Ricketts's trial testimony, the $2, 500 down payment came from the Ricketts' joint account into which she had deposited $3,000 from her City Loan account one year earlier.
 October 1992 Refinanced the Sylvan Shores property, using $5,839.60 of the proceeds to retire the 575 Catherine property mortgage, which Mrs. Ricketts still owned at the time of trial.
 March 1993 Sold the Mansfield property, earning proceeds of $18,090.89 — $10,000 was deposited into a joint account, $5,300 was used to repay a car loan, $750 was deposited in Mrs. Ricketts's IRA account, and the balance was placed in a joint account and was later used for improvements to the Sylvan Shores property.
 December 1994 Exchanged the Greenfield and 1436-1438 Catherine properties for 420-422 South Douglas as part of a "1031 Tax Deferred Exchange." Repaid the $9,370. 64 Greenfield mortgage.
The trial court determined:
 [A]ll funds used to purchase or exchange for rentals owned by Plaintiff at the termination of marriage are traceable to Plaintiff's pre-marital separate property. Except for the City Loan Savings Account held in Plaintiff's name, Plaintiff and Defendant maintained joint accounts through which mortgage, tax, insurance and repair expenses were paid. The rentals provided for sufficient cash flow for all rental expenses and provided net profits that were comingled [and] used for ordinary expenses.
The trial court treated $7,350 of the Greenfield and 1436-1438 Catherine properties' increased fair market value as marital property arising from Mr. Ricketts's work "to improve their condition to make them marketable for the 1031 tax deferred exchange." The value of Mr. Ricketts's other repair work on the properties did not, in the trial court's opinion, increase fair market value and thus did not constitute marital property. The trial court found that all other increases in fair market value were attributable to "passive increases and inflation."
In our judgment, the trial court did not abuse its discretion in deciding that the rental properties owned by Mrs. Ricketts at the termination of the marriage were her separate property, traceable to her premarital property. Kathleen Hughes, a certified public accountant, testified that she had reviewed Mrs. Ricketts's tax returns, bank accounts, and documents related to the rental property transactions. When asked whether Mrs. Ricketts's rental properties could be traced to her separate premarital property, Hughes responded as follows:
 Yes, I feel because of the fact that there was a separate savings account maintained up through `91 where the purchase of the properties came out of and the fact that on the [city of Springfield] tax return which requires you to separate your property as to your ownership it appears to me that the rental property and the IRA's were intended to be Mrs. Ricketts.
Hughes also testified that rental income had exceeded expenses on the properties in the years 1984 through 1995, showing that marital income was not used for their upkeep. The trial court's conclusion was further supported by Mrs. Ricketts's testimony identifying the source of funds used to purchase rental properties during the marriage and the destination of the proceeds from the sale of her premarital rental properties. In other words, the trial court could have reasonably found that the rental properties owned by Mrs. Ricketts at the time of divorce were her separate property because competent, credible evidence supported the determination that these properties were traceable to the rental properties she owned prior to the marriage. See R.C.3105.171(A)(6)(b). Additionally, after hearing testimony on the rental properties' increased fair market values and the type of work that Mr. Ricketts had performed on the properties, the trial court did not abuse its discretion in determining that the rental properties' increased fair market value — with the exception of $7,350 — was attributable to passive appreciation.
The second assignment of error is overruled.
 I. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT DIVIDED THE PROPERTY BECAUSE IT CONSIDERED BOTH THE MARITAL AND SEPARATE PROPERTY AND DIVIDED IT IN WHAT IT BELIEVED WAS A MORE OR LESS EQUAL MANNER, WITHOUT CONSIDERING THAT THE PARTIES' SEPARATE PROPERTY SHOULD REMAIN SEPARATE AND NOT BE DIVIDED EQUALLY.
Mr. Ricketts contends that the trial court "mixed apples and oranges" in determining that "the parties' claims to the marital and separate property roughly off-set one another." We understand this claim to assign error to the following conclusions drawn by the trial court:
 In summary, the Court finds that Defendant's STRS is his separate property; the rental properties are Plaintiff's separate properties; Plaintiff's I.R.A. and Rubbermaid stocks are separate properties; the $7,350.00 improvements made to realty as part of the tax deferred trade represent an increase in value constituting marital property; that Plaintiff purchase[d] STRS disability benefits for Defendant in the amount of $10,445.00; that Plaintiff used $5,839.60 from Sylvan Shores to retire the debt on East Rose; that Plaintiff deposited $8,029.25 into the City Loan account from unidentified sources; and Plaintiff received the benefit of Defendant's increased disability pay from 1990 — 1995. These amounts roughly off-set each other and therefore any claims by one party or the other arising therefrom are extinguished.
Contrary to Mr. Ricketts's assertion, we are confident that the trial court understood and followed the R.C. 3105.171
directive to disburse each spouse's separate property to that spouse and to make an equitable division of their marital property. It appears that the trial court treated the $8,029.25 City Loan account as Mrs. Ricketts's separate property, and, on the state of the record, we cannot say that this determination was an abuse of discretion. While the $10,445 STRS contribution made by Mrs. Ricketts benefitted Mr. Ricketts, the $7,350 and the $5,839.60 represent the value of contributions made by Mr. Ricketts that benefitted Mrs. Ricketts. The trial court also acknowledged that Mrs. Ricketts had the advantage of the increased STRS benefits during the remainder of the parties' marriage; however, it did not indicate the extent of the increased benefit to Mrs. Ricketts, and the record provides no insight. Although there is some inequality in the division of the $7,350, the $5,839.60, and the $10,445, the inequality does not — taking into account the entire record — amount to an inequitable division.
The first assignment of error is overruled.
 III. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT AWARDED POLLY THE MARITAL RESIDENCE THAT ORMONDE OWNED BEFORE THE MARRIAGE.
Mr. Ricketts argues that allowing Mrs. Ricketts to purchase his interest in the Sylvan Shores property was an abuse of the trial court's discretion because he brought the property to the marriage and because the divorce decree awarded him no real property. Alternatively, Mr. Ricketts insists that the trial court miscalculated the amount of his interest in the property.
"[S]eparate real property can be transformed by the grantor spouse into marital property by a gratuitous transfer to the grantee spouse of a present interest in the property." Helton v.Helton (1996), 114 Ohio App.3d 683, 686. The fact that one spouse brought the marital residence to the marriage is not determinative of how it should be divided; rather, the trial court should consider this fact along with other relevant factors in making an equitable property division. Jelen v. Jelen (1993), 86 Ohio App.3d 199,202. The spouse who owned the marital residence prior to the marriage is "entitled to receive reasonable compensation for that premarital interest in this property." Getter v. Getter
(1990), 90 Ohio App.3d 1, 8.
The trial court found by clear and convincing evidence that Mr. Ricketts had given to Mrs. Ricketts "an estate by entireties with rights of survivorship" in the Sylvan Shores property and awarded her the right to purchase Mr. Ricketts's interest therein for $25,000. That Mr. Ricketts was not awarded an interest in Mrs. Ricketts's rental properties and that he brought the Sylvan Shores property to the marriage did not govern its disposal. See Jelen,86 Ohio App.3d at 202. As we previously discussed, the trial court reasonably concluded that the rental properties were Mrs. Ricketts's separate property and, in compliance with R.C.3105.171(D), disbursed them to her. Because Mr. Ricketts made a gratuitous transfer to Mrs. Ricketts of a present interest in the Sylvan Shores property, the trial court did not err in concluding that it was marital property. See Helton, 114 Ohio App.3d at 686. The trial court could have reasonably decided to allow Mrs. Ricketts to purchase Mr. Ricketts's interest in the Sylvan Shores property from the evidence that Mrs. Ricketts was actively involved in the Sylvan Shores Lake Association, that she had made significant improvements to the property, and that, in April 1996, Mr. Ricketts had leased a house in the Bellefontaine area. Furthermore, the trial court correctly set the purchase price of Mr. Ricketts's interest at $25,000 by crediting Mr. Ricketts for his premarital equity of $15,000 in the Sylvan Shores property and for one-half of its remaining "appreciated value" or equity, i.e., one half of the difference between the 1995 fair market value ($89,000) and the mortgage debt at the time Mr. Ricketts was restrained from the property ($54,000) after subtraction of the premarital equity. Although the trial court's description of the formula for calculating the purchase price could have been clearer, its calculation was certainly correct:
 $89,000 fair market value — $54,000 mortgage = $35,000 total equity. $35,000 total equity — $15,000 Mr. Ricketts's premarital equity = $20,000 marital equity. One-half marital equity = $10,000. $15,000 premarital equity + $10,000 one-half marital equity = $25,000 purchase price.
The third assignment of error is overruled.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED POLLY THE VALUE OF HER IRA CONTRIBUTIONS MADE DURING THE MARRIAGE.
Mr. Ricketts asserts that, pursuant to R.C.3105.171(A)(3)(i), the contributions that Mrs. Ricketts made to her IRA during the marriage were marital property.
The trial court found that, during the marriage, Mrs. Ricketts had contributed a total of $9,264.69 to her IRA, including $7,260 from her individual City Loan account and $2,004.69 from "an untraceable source." This finding is supported by Mrs. Ricketts's testimony that she had initially contributed to an IRA prior to marriage and that, during marriage, she had funded the IRAs with money from her City Loan account, proceeds from selling the Mansfield property, and $2,004.69 that had been rolled over into a Puritan Fidelity IRA in 1987 from an untraceable source. When asked whether her IRA contributions had been "either rolled over or the source has been a City Loan account that [she] had prior to [the] marriage," Mrs. Ricketts responded affirmatively. Hughes also testified that she had determined that "there was enough money in the City Loan account to cover the IRA payments."
Retirement benefits acquired by either spouse during the marriage constitute marital property subject to equitable distribution. R.C. 3105.171(A)(3)(i) and (ii), (B), and (C);Getter, 90 Ohio App.3d at 9. Premarital contributions to a retirement account constitute separate property. Getter,90 Ohio App.3d at 9. The trial court did not abuse its discretion in finding that Mrs. Ricketts's IRA contributions in the amount of $7,260 were her separate property because they were traceable to either her individual City Loan account or to proceeds from the sale of the Mansfield property, which Mrs. Ricketts owned coming into the marriage. As to the $2,004.69 contribution from an untraceable rollover, the trial court apparently determined that these funds were nevertheless Mrs. Ricketts's separate property. On the state of the evidence, we cannot say that this determination was unreasonable. Certainly there was no evidence that this contribution represents marital assets. In other words, there was competent, credible evidence that the IRAs were traceable to Mrs. Ricketts's separate property, and the trial court thus reasonably disbursed them as Mrs. Ricketts's separate property.
The fourth assignment of error is overruled.
The judgment will be affirmed.
FAIN, J. and YOUNG, J., concur.
Copies mailed to:
Linda Joanne Cushman
John H. Rion
 Hon. Robert D. Nichols (by assignment)