HELTON, Appellee,

v.

HELTON, Appellant.

[Cite as *Helton v. Helton* (1996), 114 Ohio App.3d 683.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15540.

Decided Sept. 27, 1996.

*Dennis M. Hanaghan,* for appellee.

*Debra C. Schram,* for appellant.

FAIN, Judge.

Defendant-appellant Jack Dale Helton appeals from a judgment and decree of divorce granting plaintiff-appellee Lora Lee Helton a one-half interest in the equity of property located at 621 Schuyler Drive, Kettering, Ohio. Helton maintains that the 621 Schuyler Drive residence was his separate property, even though he had executed a survivorship deed that named his wife as a co-owner. Mr. Helton argues that he executed the deed for estate-planning purposes and that he never intended to transform the real estate from his separate property into marital property.

We conclude that there are sufficient facts in the record to support the trial court's finding that Mr. Helton had the donative intent necessary to transform the 621 Schuyler Drive residence from his separate property to marital property. Accordingly, the judgment of the trial court is affirmed.

I

Jack Dale Helton and Lora Lee Helton were first married in April 1947. After thirty-two years of marriage, they were divorced in April 1979. The Heltons had two children during their first marriage, both of whom are now adults. As part of the first divorce settlement, the trial court awarded Ms. Helton the marital residence, located at 3815 Longridge Drive, Kettering, Ohio. After his first divorce, Mr. Helton, along with his two other siblings, inherited from his mother a one-third interest in the property located at 621 Schuyler Drive, Kettering, Ohio. Soon after, Mr. Helton bought out the interests of his siblings in the property.

In April 1985, Mr. and Ms. Helton remarried. Prior to the second marriage, Ms. Helton had transferred ownership of the 3815 Longridge Drive residence to her daughter, Vicky, as a gift. After the marriage, both Mr. and Ms. Helton resided at the 621 Schuyler Drive residence.

In October 1990, the Heltons met with an estate-planning attorney to draft their wills. At that time, Mr. Helton executed a deed conveying to himself and Ms. Helton the real property located at 621 Schuyler Drive for their joint lives, remainder to the survivor of them. Mr. Helton later testified that he executed the deed to provide a home for Ms. Helton after his death and also to provide his daughter, Linda, with the property after Ms. Helton's death.

On September 27, 1995, the Heltons divorced for the second time. During trial, both parties stipulated that the 621 Schuyler Drive residence was valued at $79,500, with $25,250 remaining on the mortgage. The trial court awarded the property to Mr. Helton, but required him to pay Ms. Helton $27,125 for her interest in the equity of the property.

From the judgment of the trial court, Mr. Helton appeals.

## II

Mr. Helton's sole assignment of error is as follows:

"The trial court erred in finding that the property at 621 Schuyler Drive, Kettering Ohio, was marital property."

Mr. Helton contends that he lacked the donative intent necessary to transform the 621 Schuyler Drive residence from his separate property to marital property. Despite the execution of the survivorship deed, Mr. Helton argues that he transferred an interest in the property strictly for estate-planning purposes, not to transfer a present possessory interest in the property. In short, Mr. Helton believes that Ms. Helton is not entitled to any interest in the 621 Schuyler Drive property.

There is no question that the 621 Schuyler Drive residence was, at the start of the Heltons' marriage, Mr. Helton's separate property. See R.C. 3105.171(A)(6)(a)(ii). The issue before us is whether the status of the property was transformed when Mr. Helton granted Ms. Helton an ownership interest in the real estate during the marriage. In reviewing the trial court's decision to divide the marital property, we must determine, after considering the totality of the circumstances, whether the trial court abused its discretion. *James v. James* (1995), 101 Ohio App.3d 668, 680, 656 N.E.2d 399, 406–407, citing *Focke v. Focke* (1992), 83 Ohio App.3d 552, 555, 615 N.E.2d 327, 328–329.

We recognize as a threshold principle that "spouses can change separate property to marital property based on actions during the marriage." *Moore v. Moore* (1992), 83 Ohio App.3d 75, 77, 613 N.E.2d 1097, 1099. The most commonly recognized method for effecting this change is through an *inter vivos* gift of the property from the donor spouse to the donee spouse. The essential elements of an *inter vivos* gift are "(1) an intention on the part of the donor to transfer the

title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it." *Bolles v. Toledo Trust Co.* (1936), 132 Ohio St. 21, 7 O.O. 60, 4 N.E.2d 917, paragraph one of the syllabus. Further, "[a]n *inter vivos* gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another." *Smith v. Shafer* (1993), 89 Ohio App.3d 181, 183, 623 N.E.2d 1261, 1263, citing *Saba v. Cleveland Trust Co.* (1926), 23 Ohio App. 163, 165, 154 N.E. 799, 800. The donee has the burden of showing by clear and convincing evidence that the donor made an *inter vivos* gift. *Id.,* citing *In re Fife's Estate* (1956), 164 Ohio St. 449, 456, 132 N.E.2d 185, 190; see *Bolles,* at paragraph two of the syllabus.

Numerous appellate districts in Ohio have recognized that separate real property can be transformed by the grantor spouse into marital property by a gratuitous transfer to the grantee spouse of a present interest in the property. *Gills v. Gills* (Dec. 23, 1994), Lake App. Nos. 93–L–191, 93–L–194, unreported, 1994 WL 738499; *Domrose v. Domrose* (Sept. 16, 1994), Ottawa App. No. 93-OT-054, unreported, 1994 WL 506180; *Anderson v. Anderson* (July 7, 1992), Hocking App. No. 91–CA–1, unreported, 1992 WL 174716; *Moore,* 83 Ohio App.3d at 78, 613 N.E.2d at 1099–1100. However, by statute, the holding of title to property, even by both spouses in a form of co-ownership, does not, by itself, determine whether the property is marital property. R.C. 3105.171(H)[1]; see *Kahn v. Kahn* (1987), 42 Ohio App.3d 61, 65, 536 N.E.2d 678, 683 ("A steadfast rule resulting in a gift to one spouse every time property is titled jointly encourages married couples to isolate separate property in contemplation of divorce."). Accordingly, our inquiry focuses on whether Mr. Helton had the requisite donative intent to transfer a present possessory interest in the property to Ms. Helton.

This court has already decided a case very similar to the one before us. In *Wolf v. Wolf* (Sept. 27, 1996), Greene App. No. 96 CA 10, unreported, 1996 WL 563997, Mr. Wolf and his mother, as owners of real property, executed a joint survivorship deed to themselves and Ms. Wolf, to protect the property from probate expenses. In finding that Mr. Wolf intended to convey a present possessory interest to Ms. Wolf, this court observed:

---

1. R.C. 3105.171(H) reads as follows:

"Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property."

"We are mindful of R.C. 3105.171(H), that provides that the holding of title by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital or separate property. Here, however, the evidence presented more than a mere form of ownership. It demonstrated a transaction entered into to accomplish a specific object: avoidance of expense that would otherwise accompany the death of either Mr. Wolf or his mother. This benefit could not be achieved without Mr. Wolf and his mother giving the plaintiff Mrs. Wolf an interest in the property. The fact that the affection that may have existed at the time of the conveyance has vanished does not nullify the conveyance that was made at that time."

In light of our holding in *Wolf*, we conclude that the testimony in the case before us supports the trial court's finding that Mr. Helton intended to transfer a present possessory interest in the 621 Schuyler Drive property to Ms. Helton when he executed the joint survivorship deed in planning for his estate. At trial, Ms. Helton testified as follows:

"Counsel: Did he tell you that he wanted you to have a half interest?

"Ms. Helton: Yes, sir.

"Counsel: Where did he tell you that? Where were you.

"Ms. Helton: We were getting our wills made out. * * *

"Counsel: And what did he say he wanted to do?

"Ms. Helton: Well, everything—if he should go before me, everything belonged to me, then from there on, it goes down, okay."

Mr. Helton's testimony was similar, although Mr. Helton denied transferring a present possessory interest to his wife:

"Counsel: What was your intent, at that time?

"Mr. Helton: My intent was to see that my older daughter got the house when we passed away; that it wasn't in the Deed to be split up between the two of them.

"Counsel: Okay. But you put a Deed in Lora's name?

"Mr. Helton: Yes.

"Counsel: Why did you put it in Lora's name?

"Mr. Helton: So she had a place to live until she passed away."

We conclude that, like the husband in *Wolf*, Mr. Helton intended to convey a present possessory interest in the 621 Schuyler Drive property when he executed a joint survivorship deed to himself and Ms. Helton, even though the purpose of the conveyance was to further the avoidance of taxes or probate

expense. Accordingly, the trial court did not abuse its discretion by reaching this same conclusion.

Mr. Helton's sole assignment of error is overruled.

## III

Mr. Helton's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF and GRADY, JJ., concur.