Appellant Daniel Lynn Geuy appeals from the Champaign County Common Pleas Court's judgment entries approving a magistrate's decision and overruling his objections to the magistrate's decision.
Daniel advances two assignments of error. First, he contends the trial court erred by finding no transmutation of Lynn's residence from separate property into marital property. Next, he claims the trial court erred by attributing an increase in the value of Lynn's residence to passive appreciation.
The record reflects that Lynn and Daniel owned their own homes before their December 28, 1991, marriage. After the marriage, Daniel moved into Lynn's home and ultimately sold his home in 1993. After paying his mortgage, Daniel had approximately $20,000 remaining from the sale. He used much of the money to pay various bills. Although the record does not reveal clearly whose bills were paid, some of the bills appear to have been marital debt, while others represented individual debts of Daniel or Lynn. The record also contains evidence that he used some of the money to pay capital gains taxes.
The present dispute, however, focuses on Lynn's residence, which became the marital home. Lynn purchased the property in 1984 for approximately $35,000. The record contains a tax appraisal valuing the home at $44,000 in 1991, the year of the parties' marriage. Sometime after the parties' marriage but before 1993, Daniel built a small garage on Lynn's property and used the area as a workshop. He also erected a privacy fence around the back of her property. In 1993, the parties sought a new mortgage on Lynn's property and obtained an appraisal valuing it at $66,000. In conjunction with the refinancing, Lynn acted upon the advice of a bank representative and executed a deed conveying the property to Daniel and Lynn as joint tenants with rights of survivorship. Thereafter, Daniel, a carpenter, made additional improvements to the marital residence with some assistance from Lynn. The parties subsequently separated in 1996. In preparation for divorce proceedings, both parties obtained updated appraisals for the property. Daniel's 1997 appraisal valued the property at $76,000, and Lynn's 1997 appraisal valued the property at $72,000.
Following a hearing, a magistrate issued a decision with findings of fact and conclusions of law. In relevant part, the magistrate found Daniel not entitled to recover the $20,000 he spent following the sale of his home because the money "has not been traced" and "has not been proven to exist in the form of marital property, or any other property." The magistrate also declared the marital residence Lynn's separate property and found Daniel not entitled to any part of the property's appreciation. In support of his ruling, the magistrate noted Daniel's failure to link his work on the property with the increases in its value.
Daniel subsequently filed objections to the magistrate's decision. The trial court overruled the objections and adopted the magistrate's decision on August 21, 1997. Thereafter, Daniel filed a timely notice of appeal challenging the trial court's ruling. He advances the following two assignments of error:
 I. "The trial court erred in failing to find a transmutation of the wife's premarital home to marital property in the face of her affirmative act conveying the one-half interest to the husband on the heels of the husband's application of the net proceeds from the sale of his premarital property toward the accumulated marital debts and towards the wife's premarital debt."
In his first assignment of error, Daniel contends the trial court erred by awarding Lynn the marital residence as her separate property. In support, Daniel notes that Lynn conveyed to him a one-half interest in the home. He also cites his investment of $20,000 "toward the debts of the parties" and his work on the marital residence as evidence of the parties' mutual understanding that the property was a marital asset.
After reviewing the record, we find Daniel's argument unpersuasive. In Helton v. Helton (1996), 114 Ohio App.3d 683, we recognized that "the holding of title to property, even by both spouses in a form of co-ownership, does not, by itself, determine whether the property is marital property." Id. at 686, citing R.C.3105.171(H). Furthermore, in James v. James (1995), 101 Ohio App.3d 668,684, we noted that "[a]ppellate review of a trial court's classification of property as marital or separate is based upon whether the determination is supported by the manifest weight of the evidence." See also Marcum v. Marcum (1996), 116 Ohio App.3d 606.
In the present case, Lynn's only explanation for making the conveyance was as follows: "We were, had a contract on a farm outside of Mechanicsburg, and the farm had no furnace. And the man, Mike at Fifth Third, told us that if we would rewrite our loan with the house at that time, that he would help us finance for the farm which is why we did that." Given the record before us, we cannot say the trial court's finding that the residence was Lynn's separate property, notwithstanding her conveyance to Daniel, is against the manifest weight of the evidence. Nothing in her testimony suggests that she made the conveyance with true donative intent.
Furthermore, Daniel's reliance upon his investment of money and labor to demonstrate a "mutual understanding" is unpersuasive. At the outset, we note that the record does not clearly reflect what portion of Daniel's $20,000 proceeds from the sale of his home went to pay Lynn's bills or even marital debts. The record contains testimony suggesting that much of the money went to pay Daniel's capital gains taxes and his own bills. In any event, we find insufficient evidence of a "mutual understanding" to say that the trial court erred in its ruling. Likewise, with respect to Daniel's work on the residence, we find little evidence in the record linking his improvements to Lynn's conveyance. Consequently, we simply cannot say the trial court erred when it awarded Lynn the residence as separate property. Accordingly, we overrule Daniel's first assignment of error.
 II. "The trial court ignored real estate appraisal reports which had been submitted as evidence by stipulation of the parties, and which provided a competent means of distinguishing the passive appreciation component of the $30,000 value increase from that portion of the increase in value attributable to the substantial improvements to the pleasant street residence undertaken by the parties during the course of the marriage."
In his second assignment of error, Daniel contends the trial court erred by attributing the marital residence's increase in value to passive appreciation. In support, he notes that the property was appraised at $44,000 in 1991, the year the parties married. As the magistrate noted, however, this appraisal was performed pursuant to an auditor's tax evaluation. A 1993 real estate appraisal done after Daniel had built a privacy fence and small garage valued the property at $66,000. Daniel then made various interior improvements to the home, and the parties' 1997 real estate appraisals valued the property at $72,000 and $76,000 respectively. In his brief to this court, Daniel argues that even assuming a passive appreciation rate of $2,500 per year throughout the parties' five and one-half year marriage, more than $16,000 in appreciation remains. He reasons that the increase reasonably can be attributed to the work he performed.
We note, however, that most of Daniel's work on the property took place from 1993 until the parties' 1997 divorce. As we noted above, a 1993 real estate appraisal valued the home at $66,000. The parties' 1997 appraisals averaged $74,000. Consequently, by Daniel's own calculations, passive appreciation of $2,500 per year would account for the 1993 to 1997 increase.
The only remaining issue concerns the home's apparent increase in value from $44,000 in 1991 to $66,000 in 1993. Daniel suggests that the increase is due largely to his construction of a back-yard privacy fence and a small garage. We note, however, that the 1991 appraisal of $44,000 is a tax appraisal and, as such, is difficult to compare with the later appraisals, which were not done for taxation purposes. Accordingly, we cannot say the trial court erred by finding the home's increased value due to passive appreciation rather than Daniel's improvements.
In reaching this conclusion, we do not suggest that his work was valueless. In all probability, a home benefitting from the presence of a fence, a garage, and numerous indoor improvements is worth more than a home without such improvements. In the present case, however, Daniel failed to present testimony establishing a value for any of the improvements, and we cannot say the trial court erred by finding the appraisals inadequate for that purpose. Accordingly, we overrule Daniel's second assignment of error and affirm the judgment of the Champaign County Common Pleas Court.
Judgment affirmed.
WOLFF, J. and FAIN, J., concur.
Copies mailed to:
Gregory T. Merritt
John B. Huber
Hon. Roger Wilson