OPINION
This appeal arises from a judgment of the Court of Common Pleas of Allen County, Domestic Relations Division, wherein the court found, as part of a final divorce decree, that Defendant-Appellant, David R. Guffey, made a partial gift of $74,000 in bonds to Plaintiff-Appellee, Jewel G. Guffey, during their thirty-three-year marriage. For the reasons stated in this opinion, we reverse the trial court's decision.
The essential facts surrounding the property at issue are as follows:
In 1989, David's mother passed away. As a result, David received approximately $12,000 as part of the settlement of his mother's estate. In addition to the estate funds, David's mother kept roughly $160,000 in cash in a bank safety deposit box. Upon her death, Jewel, who had a key to the box, went to the bank to retrieve the cash. David and his siblings then divided the cash equally without accounting for it in the estate. Each received $34,600.
Thereafter, David placed the money in a joint bank account with his brother, John, in an effort to keep the extra income hidden from colleges and universities so that David's children could receive certain financial aid. After a while, David terminated the account with his brother and placed the money into a safety deposit box at the Huntington National Bank. At that point, a bank employee, Jim Harriman, discussed with David the option of purchasing bonds. After hearing the benefits of this financial plan, David took the money he received as a result of his mother's death, plus another $13,400 of his earnings from his occupation as a fire fighter, to purchase $60,000 worth of savings bonds in December 1993 and January 1994. The evidence reveals that half of the bonds were titled to Jewel or David and the other half were titled to David or Jewel.
Jewel filed a complaint for divorce in January 1998. At the final hearing, Jewel maintained that the bonds, which had since increased in value to $74,000, were to be used as the couple's retirement "nest egg" and that she believed them to be her property as well as David's. David, on the other hand, testified that he never intended to gift the bonds to his ex-spouse and that Jewel's interest in the property, if any, was to arise only upon David's death.
Based upon the evidence, the trial court found that David intended to "transfer partial ownership of the funds received from the death of his mother to his wife, and that combining those funds with the martial money and purchasing bonds in each of these parties primary name with survivorship rights in the name of the other, is a manifestation of that intent." Thus, in its December 10, 1998 judgment entry of divorce, the court ordered each party to receive half of the bonds. It is from this decision that David has filed the instant timely appeal.
Assignment of Error I
 The trial court erred when it ruled that David Guffey made a gift of 50% of approximately $74,000 to his wife Jewel.
R.C. 3105.171(A)(3)(a)(I) states that "marital property" includes "all real and personal property that is currently owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage." Similarly, R.C. 3105.171(A)(6)(a)(i) provides that "separate property" includes an inheritance by one spouse "by bequest, devise or descent during the course of the marriage". We also note that R.C. 3105.171(A)(6)(b) states that a spouse's commingling of separate property with marital property "does not destroy the identity of the separate property, except when the separate property is not traceable." Further, R.C. 3105.171(H) provides that holding property in co-ownership with a spouse is not determinative of whether the property is separate or marital.
The evidence is apparent that David purchased $60,000 worth of bonds with $13,400 of income he earned as a fire fighter during the marriage; those funds were clearly marital. David also used approximately $46,600 that he received as a result of his mother's death toward the purchase of the bonds. At the outset, those funds were separate property.
It is well established, however, that one spouse can convert separate property into marital property through that spouse's own actions. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 161. Accordingly, our inquiry must focus on whether David's actions in purchasing the bonds changed the characterization of this property from separate to marital.
A common method of property conversion is through an inter vivos gift from the donor spouse to the donee spouse. Id. The essential elements of an inter vivos gift have been set forth as follows:
 (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2) in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it.
Helton v. Helton (1996), 114 Ohio App.3d 683, 685, citing Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21, paragraph one of the syllabus. This court has also described an inter vivos gift as "an immediate, voluntary, gratuitous and irrevocable transfer of property * * *." Smith v. Shafer (1993), 89 Ohio App.3d 181, 183. The donee bears the burden of demonstrating that the donor has gifted the property by clear and convincing evidence. Barkley,119 Ohio App.3d 155.
The crux of David's argument centers on his contention that Jewel did not present sufficient evidence to prove donative intent. Since the determination of donative intent is a factual issue, an appellate court should not disturb the trial court's decision unless there is a lack of competent, credible evidence to support such a finding. Younkman v. Younkman (Aug. 15, 1990), Montgomery App. No. 11589, unreported. Based upon the evidence in this case, we agree with David and find that the record is devoid of any competent, credible evidence tending to prove donative intent.
Jewel's entire testimony regarding the property at issue was that she always believed the bonds belonged to her as well as to David because she was his spouse. Jewel further stated that David told her that the bonds were to be used in the future as a "nest egg" and that she understood that the money was not to be spent before the couple retired. David testified that he never intended the bonds to be a gift; he merely wanted Jewel to have "something to live on" in the event of his untimely death. We conclude that this evidence does not support the finding that David intended to make an immediate transfer of the bonds to Jewel.
Based upon the foregoing, we find that the trial court erred in ordering that Jewel was entitled to half of the bonds. However, on remand, the trial court should redistribute the property recognizing the fact that David did use approximately $13,400 in marital income toward the purchase of the bonds.
David's first assignment of error is sustained.
Assignment of Error II
 The trial court erred when it overruled the Defendant/Appellant's motion for new trial, to hear one additional witness.
Assignment of Error III
 The trial court erred when [it] ruled that the entire amount of the alleged, but disputed, gift to the wife was not marital property and hence belonged to Jewel entirely, instead of dividing it equally as if it were joint marital property.
Due to our disposition of David's first assignment of error, we find that the remaining assignments of error have been rendered moot.
Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby reversed and the matter is remanded for further proceedings in accordance with this opinion.
Judgment reversed and cause remanded.
HADLEY and SHAW, JJ., concur.