OPINION
Defendant-appellant, William Yeary, appeals a decision of the Brown County Court of Common Pleas finding appellant's premarital, separate property to be marital property.
William and Jinnie Yeary were married on February 11, 1984. On June 1, 1985, the parties bought a 38.209 acre piece of property for $57,000, paying $35,000 as a down payment. It is undisputed that the $35,000 down payment came from appellant's separate property. Both parties' names were placed on the deed and the property was used as the parties' marital residence. Monthly mortgage payments and repairs and improvements were paid with marital funds. In 1989, the parties paid off the $11,000 mortgage balance with appellant's premarital certificates of deposit.
On November 1, 1989, the parties bought a second piece of property, a 105.016 acre tract of land, for $80,750. Although the parties dispute the exact amount of the down payment, it is undisputed that the down payment came from appellant's inheritance from his mother's estate.[1] Both parties' names were placed on the deed and the property was used as the parties' marital farm. The parties gave a $75,000 mortgage which covered both properties. Monthly mortgage payments and repairs and improvements were paid with marital funds.
On February 28, 1995, appellee filed a complaint for divorce. A hearing was held on October 4, 1996 to determine the value of the parties' assets and whether such assets were marital or separate property. The parties strongly disagreed as to whether the two down payments and the payment of the $11,000 mortgage balance were marital or separate property. By decision filed March 4, 1996, the magistrate stated that:
 1. With respect to the 38.209 acre property, the Magistrate finds the value of the property to be $43,700, as agreed by the parties. The Magistrate finds that [appellant's] contributions of separate property toward the purchase of this real estate are no longer traceable, it being the intent of the parties to make this a marital residence at the time of the purchase in 1985. The entire property is marital property.
 2. With respect to the 105.02 [sic] acre property, the Magistrate finds the value of the property to be $121,300, as agreed by the parties. The Magistrate finds that [appellant's] contributions of separate property toward the purchase of this real estate are also no longer traceable. The separate property contributions were a minor part of the funds going into this property. The parties negotiated the purchase of the property in joint names and intended to make it their marital farm. The entire property is marital property. This property is subject to a $67,200 mortgage which is a marital debt of the parties.
Appellant filed objections to the magistrate's decision, which were overruled by the trial court on May 1, 1996.
The parties were divorced by decree on February 28, 1997. The divorce decree was, however, not a final appealable order as the trial court "[took] under advisement * * * all issues regarding property." By findings of fact and conclusions of law filed September 22, 1997, the magistrate ordered both properties to be sold and their proceeds, after payment of the mortgage balance and selling expenses, to be divided equally. The magistrate incorporated his March 4, 1996 determinations that appellant's monetary contributions toward the purchase of both properties from premarital, separate property were no longer traceable, and thus no longer appellant's separate property. By judgment entry filed June 28, 1999, the trial court gave appellee the option to purchase the marital residence and appellant the option to purchase the marital farm. The trial court also "specifically adopt[ed] as its order and affirm[ed] the Magistrate's Decision of March 4, 1996 regarding the issues as to marital/separate property."
Appellant now appeals and raises as his sole assignment of error that the trial court abused its discretion when it held that the two down payments and the payment of the mortgage balance made by appellant from premarital, separate property[2] were no longer traceable, and therefore had become marital property.
In a divorce proceeding, the trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Once the trial court has determined the status of the parties' property, the court must generally disburse a spouse's separate property to that spouse and equitably distribute the marital property. R.C. 3105.171(B) and (D). We review the classification of property as marital or separate under a manifest weight of the evidence standard. Johnson v. Johnson
(Sept. 27, 1999), Warren App. No. CA99-01-001, unreported, at 7. Under such standard, the factual findings of the trial court regarding the classification of property as marital or separate "are reviewed to determine whether they are supported by competent, credible evidence." Id. The trial court's property award, in turn, will not be reversed absent an abuse of discretion. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159.
"Marital property" is defined in R.C. 3105.171(A)(3)(a)(i) to include "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[.]" Marital property does not include any separate property. R.C.3105.171(A)(3)(b). "Separate property" in turn is defined in R.C.3105.171(A)(6)(a) to include:
 (i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]
The commingling of separate and marital property does not destroy the character of the separate property unless its identity as separate property is not traceable. R.C.3105.171(A)(6)(b). The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Peck v. Peck (1994), 96 Ohio App.3d 731,734. In addition, title to property in one spouse individually or in both spouses does not determine whether that property is marital or separate. R.C. 3105.171(H).
After thoroughly reviewing the record, we find that appellant introduced sufficient evidence tracing the payment of the two down payments and of the $11,000 mortgage balance to his separate property. It is undisputed, as testified to by both parties, that the down payments for both the marital residence and the marital farm were paid solely with appellant's premarital, separate property. It is similarly undisputed that the $11,000 mortgage balance of the marital residence was solely paid with appellant's premarital, separate property. The record clearly shows that both properties were purchased independently of one another, that is, the parties did not use the proceeds from one property to buy the other property. The record also shows that during the course of the marriage, appellant's premarital, separate property used to purchase the properties and to pay off one of the properties' mortgage was never combined with marital funds. Nor was it shuffled between down payments on the properties and household and family expenses. There is also no evidence that such separate property was deposited into a joint account of the parties.
As already noted, the holding of title to property by both spouses does not in it and of itself determine whether the property is marital or separate. Thus, contrary to appellee's argument, the fact that both properties were used for marital purposes and jointly titled does not necessarily make appellant's monetary contributions to the properties from his separate property marital property.
Appellee argues, however, that appellant transferred a present possessory interest in his separate property to appellee as evidenced by the parties' joint title in both properties. "Spouses can change separate property to marital property based on actions during the marriage." Moore v. Moore (1992), 83 Ohio App.3d 75,77. The most commonly recognized method for effecting this change is through an inter vivos gift of the property from the donor spouse to the donee spouse. The essential elements of an inter vivos gift are (1) intent of the donor to make an immediate gift, (2) delivery of the property to the donee, and (3) acceptance of the gift by the donee. Bolles v. Toledo Trust Co.
(1936), 132 Ohio St. 21, paragraph one of the syllabus. "[A]ninter vivos gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another."Smith v. Shafer (1993), 89 Ohio App.3d 181, 183.
Because the holding of title to property by both spouses does not, by itself, determine whether the property is marital or separate, R.C. 3105.171(H), our inquiry focuses on whether appellant had the requisite donative intent to transfer a present possessory interest in his separate property to appellee. Heltonv. Helton (1996), 114 Ohio App.3d 683, 686. Appellee contends that such donative intent exists as "there is no evidence in the record that the appellant did not intend to make a gift at the time the marital residence was purchased, at the time the mortgage was paid off, and at the time that the farm was purchased."
It is well-established that appellant is not required to introduce evidence that he did not intend for his separate property to be commingled into marital property. See Williams v.Williams (Aug. 15, 1994), Butler App. No. CA93-10-206, unreported. Rather, the donee has the burden of showing by clear and convincing evidence that the donor intended an inter vivos gift.In re Fife's Estate (1956), 164 Ohio St. 449, 456. We find that appellee has failed to meet her burden of proof. Appellee's foregoing contention meets neither the required burden of proof nor the essential elements of an inter vivos gift.
In light of all of the foregoing, we find the evidence clearly establishes that the $35,000 down payment on the marital residence, the $11,000 payment of the marital residence's mortgage balance, and the $8,919.65 down payment on the marital farm are appellant's separate property. We further find that the trial court erred in failing to award those down payments and the payment of the mortgage balance of the marital residence to him as his separate property. Appellant's sole assignment of error is well-taken and sustained.
The judgment of the trial court is accordingly reversed and remanded. On remand, the trial court is instructed to award the foregoing three payments to appellant as his separate property and to reconsider its property division in light of the required award.
POWELL, P.J., and VALEN, J., concur.
[1] Appellant received a one-ninth share of his mother's estate. Appellant testified that it amounted to $8,919.65, which was entirely used as a down payment for the 105.016 acre property. Plaintiff-appellee, Jinnie Yeary, could not recall exactly the amount of the down payment but estimated it at $5,750 based upon the $80,750 purchase price of the property and the $75,000 mortgage. In his brief, appellant states that the $8,919.65 most likely included closing costs.
[2] The use throughout this opinion of the expression "appellant's separate property" refers solely to appellant's premarital, separate property used by the parties to pay the down payments on both properties and the mortgage balance of the marital residence.