OPINION
Appellant, Colleen Peterman, appeals from a judgment of the Court of Common Pleas of Hancock County, Domestic Relations Division, granting her a divorce from Kenneth Peterman, Appellee, and dividing the parties' marital estate. Kenneth Peterman has also filed a cross-appeal in this case. Finding none of the arguments advanced on appeal to have merit, we affirm the judgment of the trial court.
The Petermans were married on February 19, 1985, with one child being born as issue of the relationship. In April 1997, Kenneth filed for divorce, citing incompatibility, gross neglect of duty, and extreme cruelty as grounds. Colleen answered the complaint, simultaneously filing a counterclaim for divorce pursuant to the same grounds specified in Kenneth's initial pleading.
During the pendency of the action, the parties agreed to enter into a shared parenting arrangement. They presented the remaining issues of property settlement and child support to a magistrate in April 1998. The magistrate issued his report on May 6, 1998. Both parties filed objections to the report, however, after reviewing the evidence contained in the record, the trial court overruled all objections and adopted the magistrate's decision in its entirety.
On appeal to this Court, Colleen asserts the following as her sole assignment of error:
 The trial court abused its discretion when it adopted the Magistrate's Decision concluding that the Plaintiff-Appellee/Cross Appellant had "separate property" in the amount of Twelve Thousand dollars ($12,000) based on the equity in the residence he owned prior to the parties' marriage.
 In a divorce proceeding, the trial court must classify property as marital or separate and then award each spouse his or her separate assets. R.C. 3105.171(B) and (D). Marital property is then divided between the parties equally or, if an equal division is not possible, in such a manner as the court deems equitable. R.C. 3105.171(C)(1). Marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during marriage." R.C. 3105.171(A)(3)(a)(i). Separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii).
In this case, the facts indicate that Kenneth owned a home with a previous spouse in Rawson, Ohio. The house was listed for sale in 1983, and in June of that year, Kenneth received an offer of $45,000. Kenneth ultimately rejected the offer and took the house off the market. Shortly thereafter, the Court of Common Pleas of Hancock County issued a divorce decree terminating Kenneth's marriage to his previous wife, and ordering her to quit claim the Rawson home to Kenneth. Kenneth then became the sole owner of the Rawson property.
At the time of Kenneth's 1985 marriage to Colleen, the existing mortgage on the home totaled $33,000. Throughout the years, the parties made several improvements to the home, and refinanced the property in 1988 and 1993. The parties then sold the Rawson home in 1995, yielding net proceeds of $26,130. These funds, combined with money taken from a joint savings account, were used to purchase a lot in Findlay, Ohio, on which the parties planned to construct a new home. The parties separated before construction began, and the lot was ultimately sold. A net profit of $31,690 was realized from that sale.
In his report, the magistrate determined that Kenneth was entitled to $12,000 of the lot proceeds as separate property. In reaching this conclusion the magistrate found that Kenneth's pre-marital equity in the Rawson home ($33,000 mortgage subtracted by the $45,000 offer to purchase) could be traced directly to the purchase of the lot. Colleen disputes the trial court's classification of the $12,000 as separate property for two primary reasons.
Colleen first argues that although the pre-marital equity in the Rawson home may have been Kenneth's separate property at the outset, Kenneth converted this asset into marital property by executing a new deed to the home with Colleen named as a joint owner. We observe that R.C. 3105.171(H) provides that holding property in co-ownership with a spouse is not determinative of whether the property is separate or marital. It is true that a common method of property conversion is through an inter vivos
gift from the donor spouse to the donee spouse. Barkley v.Barkley (1997), 119 Ohio App.3d 155, 161. However, in order to prove a gift, the following elements must exist:
 (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2) in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it.
 Helton v. Helton (1996), 114 Ohio App.3d 683, 685, citing Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21, paragraph one of the syllabus. This Court has also described a gift as "an immediate, voluntary, gratuitous and irrevocable transfer of property * * *." Smith v. Shafer (1993), 89 Ohio App.3d 181, 183. Furthermore, the donee bears the burden of proving a gift by clear and convincing evidence. Barkley, 119 Ohio App.3d 155, 158.
The evidence presented at the final divorce hearing suggests that Kenneth only placed Colleen on the new deed in order to protect her interest in the case of his death. There is no testimony tending to prove Kenneth's desire to make an immediate
transfer to Colleen. Thus, since the record does not contain clear and convincing evidence of a gift, we find that the trial court did not err in its determination of this issue. See, alsoGuffey v. Guffey (June 3, 1999), Allen App. No. 1-99-03, unreported.
Colleen next argues that the pre-marital equity was converted to marital property through commingling. Under R.C.3105.171(A)(6)(b), in the event that separate property is commingled with marital property, the identity of the separate property as such is not necessarily destroyed, except when the separate property is no longer traceable. See also Peck v. Peck
(1994), 96 Ohio App.3d 731, 734. Thus, traceability becomes the crucial issue in determining whether separate property has retained its character after being commingled with marital property. Id. The party requesting the court to classify a particular asset as separate property has the burden of proving its traceability by a preponderance of the evidence. Id. We do not find error with the trial court's conclusion in this case since the proceeds from the sale of the Rawson home could be traced directly to the purchase of the lot, which was later sold for a profit of nearly $32,000.
Colleen's assignment of error is overruled.
In his cross-appeal, Kenneth asserts four assignments of error for our consideration:
 I. The trial court erred as a matter of law when it approved the Magistrate's decision to use the final hearing date as the termination date of the marriage as related to the valuation and division of Plaintiff-Appellee/Cross Appellant's pension.
 The definition of marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage." Generally, the term "during the marriage" means the period of time between the date of marriage and the date of the final divorce hearing. R.C. 3105.171(A)(2)(a). However, the Revised Code vests a trial court with the discretion to substitute more equitable dates for purposes of the property division if the court determines that application of the general rule would be unjust. In that case, the term "during the marriage" means the period of time between the dates chosen by the court. R.C. 3105.171(A)(2)(b). R.C. 3105.171(G) further requires the trial court to specify in the order for the division of property the dates used to determine the meaning of the term "during the marriage".
In the present matter, the trial court specified that the term "during the marriage" meant the period of time between February 19, 1985, the date of the parties' marriage, to April 21, 1998, the date of the final hearing. Kenneth argues that the trial court erred in using these dates for valuation purposes since the evidence shows that the parties had been living separate and apart since September 1996. We disagree.
Our review of the evidence reveals that although Kenneth vacated the marital home in September 1996, the parties discussed a possible reconciliation thereafter; thus, Kenneth did not file the complaint until April 1997. In addition, the parties did not sever all financial ties during this time. While it is true that they did begin to keep certain separate accounts, others remained open and joint, including a small checking account and a significant investment account. The parties also retained joint insurance policies during this separation period. For these reasons, we believe that the trial court did not abuse its discretion in this respect.
Kenneth's first assignment of error is overruled.
 II. The trial court erred as a matter of law when it did not award Plaintiff-Appellee/Cross-Appellant as his separate property the value of 23.45 shares of Cooper Tire Rubber Co. stock which he owned prior to his marriage.
 In a divorce proceeding, the trial court is required to classify property as marital or separate and then award each spouse his or her separate, non-marital assets. R.C. 3105.171(B) and (D). Marital property is divided between the parties equally or, in a such a manner as the court deems equitable. R.C. 3105.171(C)(1). Marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during marriage." R.C. 3105.171(A)(3)(a)(i). In contrast, the statutory definition of separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii).
Pursuant to R.C. 3105.171(A)(6)(b), in the event that separate property is commingled with marital property, the identity of the separate property as such is not necessarily destroyed, except when the separate property is no longer traceable. See also Peckv. Peck (1994), 96 Ohio App.3d 731, 734. Thus, traceability becomes the crucial issue in determining whether separate property has retained its character after being commingled with marital property. Id. The party requesting the court to classify a particular asset as separate property has the burden of proving its traceability by a preponderance of the evidence. Id.
In the present case, Kenneth complains that the trial court erred in failing to classify a portion of the parties' Edward Jones investment account as separate property. The evidence shows that Kenneth has been employed by Cooper Tire Rubber Company ("Cooper") since 1977. It is undisputed that at the time of his 1985 marriage to Colleen, Kenneth had accumulated 23.45 shares of Cooper stock. Over the next few years, the parties amassed 160 shares of Cooper stock. In 1992, they opened an investment account and deposited all 160 shares. Shortly after the initial deposit, Cooper stock split at a rate of two shares for one, leaving approximately 320 shares in the parties' account.
Richard Rowe, a licensed stock broker employed by Edward Jones, handled the parties' account since its inception. Rowe testified that within the next seven months, the parties purchased several more shares of Cooper stock. On March 9, 1993, the parties instructed Rowe to sell all of the Cooper stock, which totaled 2,500 shares by that time. The shares sold for nearly thirty-eight dollars each, resulting in a total cash yield of $93,843.33.
According to Rowe, the proceeds from that sale remained in the account and were eventually reinvested in a variety of other stocks. Rowe testified that the parties incurred both gains and losses from those later investments, citing a net gain of only $14,309 during the life of the account. Most significantly, Rowe stated that he could not attribute any dollar value of loss or gain to any specific deposit or investment. Instead, he could only say that the money from the Cooper stock sale has been reinvested several times, and that he knew of no method to "track" those funds.
Since the proceeds from the sale of the 23.42 shares of Cooper stock are untraceable at this juncture, we find that Kenneth failed to prove, by a preponderance of the evidence, that the property has maintained its character as a separate asset. For this reason, the trial court did not err in classifying the entire account as marital property.
Kenneth's second assignment of error is overruled.
 III. The trial court erred as a matter of law by approving the Magistrate's decision determining that Defendant-Appellant/Cross Appellee's membership in the Findlay Country Club [is] a non-marital asset when it was purchased for her by her employer during the marriage.
 In his May 6, 1998 report, the magistrate concluded that Colleen's membership at the Findlay Country Club was a separate, non-marital asset because clear and convincing evidence existed to show that the membership was a gift from her father through Basol Maintenance/Basol Laboratories. Appellant claims that the evidence does not support the magistrate's finding; thus, since the membership was purchased in 1991, the equity therein should be considered marital property and divided accordingly.
Even if we were to assume, without deciding, that the trial court erred in finding the membership to be Colleen's separate property in the form of a gift, we would not sustain this particular assignment of error. The evidence establishes that the membership has no equitable value to these parties. In the event that Colleen discontinues the membership, the $4,000 in equity that has accumulated since 1991 would revert back to Basol Maintenance/Basol Laboratories since the company paid the initiation fees and dues for several years.
Kenneth's third assignment of error is overruled.
 IV. The trial court erred as a matter of law by approving the Magistrate's decision which did not include as self-generated income to Defendant-Appellant/Cross Appellee the fair rental value of a condominium where she resided rent free.
 According to Kenneth, the trial court miscalculated Colleen's "gross income" for purposes of the child support worksheet. This alleged miscalculation stems from the magistrate's refusal to include as income the approximately $750 per month that Colleen would have to pay if not for the fact that she resides rent-free in a condominium owned by her father. Kenneth specifically argues that the trial court should have characterized the free housing as "self-generated income" since Colleen is employed by Basol Maintenance/Basol Laboratories, a company exclusively owned by her father.
A child support calculation in accordance with R.C. 3113.215 is not subject to reversal on appeal in the absence of an abuse of discretion. Houts v. Houts (1995), 99 Ohio App.3d 701, 704. An abuse of discretion is a decision that can be described as unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
The applicable version of R.C. 3113.215(A)(2) provides that "gross income" includes "self-generated income". R.C.3113.215(A)(3) further states:
 "Self-generated income" means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expenses reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including, but not limited to, company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.
 Relevant case law has held that although this language deals with self-employment, rent-free housing supplied by an employer, by analogy, should be included as gross income for purposes of a child support calculation. See Merkle v. Merkle (1988), 51 Ohio App.3d 110, 112, (construing a similarly worded Child Support Guideline contained in C.P. Sup. R. 75). However, the evidence here demonstrates that Colleen's living arrangement arose out of necessity rather than in connection with her employment. Colleen testified that she and Kenneth began residing in the condominium on a rent-free basis prior to their separation in 1995. They planned on living there temporarily since, at that time, the couple had just sold the Rawson home, and planned to construct a new house on another recently purchased lot. After the couple separated in the fall of 1996, Colleen continued to live in the condominium with her father's permission.
Although it is true that Colleen enjoys both a familial and professional relationship with her father, the evidence supports the trial court's conclusion that the living arrangement was wholly unrelated to Colleen's job. Thus, we find no abuse of discretion in the court's calculation of Kenneth's child support obligation. See generally, Ringler v. Ringler (May 8, 1992), Wood App. No. 91WD068, unreported, at * * 2.
Kenneth's fourth assignment of error is overruled.
Having found no error prejudicial to the Appellant and Cross-Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
HADLEY, P.J. and SHAW, J. concur.
 ___________ WALTERS, J.