OPINION
Defendant-appellant Garry Snyder appeals from a judgment and decree of divorce. He contends that the trial court erroneously found that the land he had owned before the marriage, which he conveyed to his wife and himself, jointly, in order to accommodate the lender providing the funds for the building of their marital residence upon the land, was not his separate, traceable property. He also contends that the trial court's order designating plaintiff-appellee Ginger Snyder to be the residential parent of their son, Jordan, is against the manifest weight of the evidence.
We conclude that the trial court erred when it failed to find that the value of the land upon which the marital residence was built was Mr. Snyder's separate property. He did not convert this separate property into marital property by placing Mrs. Snyder's name on the deed to obtain financing to build the marital residence, because he lacked the donative intent necessary for an inter vivos transfer. We also conclude that the court's residential parenting order is supported by competent, credible evidence. Accordingly, that part of the judgment of the trial court dividing the property of the parties is Reversed, the judgment of the trial court is Affirmed in all other respects, and this cause isRemanded for further proceedings consistent with this opinion.
 I
The Snyders were married in 1991 and have one child, Jordan. They were joint owners of their marital residence in South Charleston, Ohio, which the Snyders, after their marriage, had constructed upon land Mr. Snyder had purchased several years before the marriage. In the final decree of divorce, the trial court adopted a magistrate's decision, designating Mrs. Snyder to be the residential parent and custodian of Jordan and ordering the marital residence sold, with the net proceeds to be divided equally between the parties.
Mr. Snyder appealed. He contended that the trial court failed to make an independent assessment of his objections to the magistrate's decision. Mr. Snyder argued that the court erred by: (1) entering a shared parenting order with respect to Jordan; and (2) finding that the $35,000 he had spent to purchase the property upon which the marital residence was later built was not his separate property. We reversed the judgment of the trial court, and remanded the case, because the trial court had erroneously reviewed the magistrate's opinion under an abuse of discretion standard, instead of de novo. Snyder v. Snyder (2001), Clark App. No. 2001-18, 2001-Ohio-1711.
On remand, the trial court independently reviewed the record, and adopted the magistrate's opinion. On the residential parenting issue, the court found as follows:
 [T]his Court finds that the Court has not been provided with sufficient evidence to establish that the parties have developed "any semblance of open communication or an ability to discuss issues together" which are essential to the success of a shared parenting plan. Similarly, this Court finds that it has not been provided with sufficient evidence to establish that both parents encourage sharing of love, affection and contact between the child and the other parent. In consideration of the foregoing, this Court finds that shared parenting was not appropriate nor was it in the best interest of the parties' minor child.
On the issue of whether the land was Mr. Snyder's traceable separate property, the Court found as follows:
 [T]his Court finds, from credible evidence, that the Defendant [sic] donative intent was to make an outright gift of one-half interest in the subject land to the Plaintiff herein and the Court further finds that the Defendant facilitated such a transfer to effectuate his donative intent at that time.
From the judgment of the trial court, Mr. Snyder appeals.
 II
Mr. Snyder's first assignment of error is as follows:
 THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT FOUND APPELLANT'S PRE-MARITAL [SIC] LAND VALUED AT $35,000.00 TO BE MARITAL PROPERTY DESPITE APPELLANT'S ABILITY TO TRACE THE PROPERTY BACK TO HIS PRE-MARITAL [SIC] SEPARATE PROPERTY
When parties divorce a trial court is required to determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Marital property includes all real and personal property, currently owned by either or both spouses, and acquired by either or both spouses during the marriage. R.C. 3105.171(A)(3)(a). Separate property includes:
 [A]ll real and personal property and any interest in real or personal property that is found by the court to be any of the following;
* * *
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of marriage;
 (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage. . . .
The commingling of marital and separate property does not destroy the character of the separate property unless its identity is no longer traceable. R.C. 3105.171(A)(b)(6). Once the court determines whether the property is separate or marital, each spouse should be awarded his separate property. R.C. 3105.171(B) and (D). Marital property should then be divided equally, or in a manner the court deems equitable. R.C. 3105.171.
Mr. Snyder claims that he is entitled to the value of the land upon which the marital home was built, because he purchased it prior to the parties' marriage. Mrs. Snyder responds by claiming that even if the property was once separate, it became marital when Mr. Snyder conveyed the property into both spouses' names.
R.C. 3105.171(H) acknowledges that holding property in co-ownership with a spouse is not determinative whether the property is separate or marital property. Nevertheless, a husband can convert separate property into marital property by making an inter vivos gift to his wife. Helton v.Helton (1996), 114 Ohio App.3d 683, 685, 683 N.E.2d 1157, 1159. To prove that an inter vivos gift has been made, the following elements are required:
 "(1) an intention on the part of the donor [husband] to transfer the title and right of possession of the particular property to the donee [wife] then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it."
 Id.
In general, a party seeking to have an asset declared separate property has the burden of proof by a preponderance of the evidence. Peck v.Peck (1994), 96 Ohio App.3d 731, 645 N.E.2d 1300, 1302. Once it is proven that specific property was the separate property of one of the spouses at, or after, the time of the marriage, the burden shifts to the other spouse to prove, by clear and convincing evidence, that the property, or some interest therein, has been given to the other spouse.Helton, supra.
The issue, then, is whether there is sufficient evidence in this record to support a finding, by clear and convincing evidence, that Mr. Snyder intended to convey to Ms. Snyder an interest in his separate property — the land — when he executed the deed conveying the property into both names. Appellate courts review a trial court's division of property under an abuse of discretion standard, but a trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence. Mays v. Mays (2001), Miami App. 2001 Ohio 1450. When we consider manifest weight arguments, we "review the evidence, and . . . determine whether, when appropriate deference is given to the factual conclusion of the trial court, the evidence persuades us by the requisite burden of proof." Howard v. Howard (Mar. 20, 1998), Montgomery App. No. 16542.
At a hearing before the magistrate, Mr. Snyder produced a receipt for the purchase of the land and a deed dated prior to the parties' marriage. The evidence in the record is that Mr. Snyder's conveyance of the property into their joint names was for the limited purpose of accommodating the lender who was providing the funds for the construction of the home. For some unexplained reason, the lender desired that the property be titled in the names of both spouses:
 A. [Mr. Snyder]. * * * And then when the house was built it was deeded in both of our names.
Q. [Mrs. Snyder's attorney]. It was?
 A. We used that as part of the equity to have the home built.
* * *
 Q. Okay. And wasn't it your intention that you would both own the home; that's what the deal was, right?
A. That was to get the money for the home.
 Q. Was it your intent at the time that you signed the Deed over to Ginger and you that you would both own the home; it was, wasn't it?
 A. The Deed was done that, I didn't understand that but, yes, it was done for our family to live there.
 Q. And you anticipated that if you were to die, she would own the property outright, right?
A. I never gave it a thought.
* * *
 Q. All right. When you went to build the house you needed money to build the house, right?
A. Yes.
Q. And to do that you had to go to the bank, right?
A. Yes.
 Q. And the bank said, we'll loan you both the money but we want both of your names on the Deed, right?
* * *
 Q. And it was your intention to make it so that you both owned this new home that you were living in, right?
 A. My intent, the land was used as a downpayment [sic] to get the house built.
* * *
 Q. Okay. And when you also learned that by putting the Deed in both of your names, if one of you were to die under a Survivorship Deed, the survivor would own the entire property, you understood that, don't you?
A. Now I understand what you're saying.
 Q. And you thought that that was the appropriate way to handle it, right?
 A. I never gave it any thought. I guess if you want me to say yes, I'll say yes.
Although Ms. Snyder's counsel strove mightily to get Mr. Snyder to admit that one of his purposes in conveying the property into their joint names was to avoid probate administration of the property at the death of the first spouse to die, Mr. Snyder's consistent testimony that he "never gave it a thought," followed, finally, by his statement, "I guess if you want me to say yes, I'll say yes," falls short of establishing his donative intent by clear and convincing evidence. In that respect, this case is distinguishable from Helton v. Helton, supra. The case before us is indistinguishable from Schell v. Schell (June 16, 1992), Clark App. No. CA 2876, in which we held that property deeded to both spouses was the separate property of one spouse when both spouses' names were placed on the deed because the couple needed to use the land as collateral to borrow money to build a home.
Ms. Snyder has failed to prove, by clear and convincing evidence, that Mr. Snyder intended to make an immediate transfer to Ms. Snyder of an interest in his separate property. In light of the evidence, we find that the record establishes that the $35,000 contribution of land to the marital residence was Mr. Snyder's separate property. Mr. Snyder's first assignment of error is sustained. On remand, the trial court is instructed to treat the value of the unimproved land as Mr. Snyder's separate property, and to reconsider its property division in light thereof.
 II
Mr. Snyder's second assignment of error is as follows:
 THE JUDGEMENT [SIC] OF THE TRIAL COURT GRANTING THE PLAINTIFF/APPELLEE STATUS OF RESIDENTIAL PARENT, THUS DENYING THE DEFENDANT/APPELLANT SHARED PARENTING RIGHTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
In his second assignment of error, Mr. Snyder argues that the trial court erred in failing to order shared parenting. R.C. 3109.04 governs the allocation of parental rights and responsibilities for the care of children. Under its provisions, the court must allocate the parental rights and responsibilities for children of divorcing parties. R.C.3109.04(A). The statute allows the trial court, in the exercise of its sound discretion, to designate one parent as the residential parent and legal custodian of the child and divide other rights accordingly, or to allocate rights to both parents under a shared parenting plan.
In this instance, neither party submitted a shared parenting plan, although required to do so under R.C. 3109.04. Even though neither party submitted a proposed written plan for shared parenting, the magistrate still considered the factors set out in R.C. 3109.04 to determine if a shared parenting plan was in Jordan's best interest. The magistrate examined factors under both sections (F)(1) and (F)(2) and found that shared parenting was not in the best interest of the child. He focused primarily on the inability of the parties to agree regarding visitation as the basis for denying shared parenting. He named Ms. Snyder as the residential parent, due to the close relationship between Jordan and his half-brother.
Under (F)(1), the court must consider the following factors:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
The following additional factors must also be considered to determine if shared parenting is in a child's best interest:
 (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 (d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.
We have reviewed the evidence in the record relevant to these factors. While there are accusations of misconduct by both parties, the record is sufficient to support an award of custody to either party. An award of custody will not be reversed by a reviewing court where the judgment is supported by competent, credible evidence. Lamoreaux v. Lamoreaux (Mar. 29, 1993), Miami App. No. 92 CA 7. Weight and credibility of evidence, and factual disputes in the testimony, are matters for the trial court to resolve. Id.
The trial court's designation of Ms. Snyder as the residential parent is supported by competent credible evidence. The record reflects contradictory evidence regarding the ability of the parties to agree about visitation in the past and in the future. The trial court could have determined, from the conflicting evidence in the record, that the parties were not able to communicate effectively concerning Jordan's interests and needs, and could have concluded that shared parenting was not in Jordan's best interests. Upon having rejected shared parenting as an option, the trial court focused on the relationship between Jordan and his half-brother and that relationship tipped the balance in favor of Ms. Snyder being designated the residential parent. We do not find this conclusion to be against the manifest weight of the evidence.
Mr. Snyder's second assignment of error is overruled
 III
Mr. Snyder's first assignment of error having been sustained, and his second assignment of error having been overruled, that part of the judgment of the trial court dividing the property of the parties isReversed, the judgment of the trial court is Affirmed in all other respects, and this cause is Remanded for further proceedings consistent with this opinion.
WOLFF, P.J., and YOUNG, J., concur.