OPINION
Rudie Easterling appeals from a judgment and decree of divorce, and raises five assignments of error. Rather than list them in order now, we will refer to each separately when discussing the merits of Mr. Easterling's arguments.
 I
Mr. Easterling contends in the first assignment of error that the trial court abused its discretion by ordering a 10% deviation in child support. In response, Ms. Easterling claims that her husband agreed to the deviation in child support. She also says the issue was waived because Mr. Easterling did not file an objection to the deviation.
The transcript of the divorce hearing reveals that the parties agreed in court to a number of items, including custody and child support. Mr. Easterling was designated the custodial parent, and Ms. Easterling was given visitation slightly in excess of the standard order. Based on the increased visitation, both sides agreed to a 10% reduction in Ms. Easterling's child support.
Our standard for reviewing child support orders is "abuse of discretion." Booth v. Booth (1989), 44 Ohio St.3d 142, 144. Abuse of discretion means "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Because the parties agreed to the deviation, we find no error in the trial court's decision. Specifically, a trial court does not act unreasonably when it adopts the agreement of the parties.
Under the circumstances we do not need to reach the waiver issue. However, we have consistently held that failure to object to a magistrate's decision waives all but plain error. Partridge v. Partridge (Aug. 27, 1999), Greene App. No. 98 CA 38, unreported, p. 3. Since no error occurred in this case, there can be no "plain error."
In view of the preceding discussion, the first assignment of error is overruled.
 II
In the second assignment of error, Mr. Easterling contends that the trial court abused its discretion by awarding spousal support when Ms. Easterling failed to request it. Mr. Easterling also alleges in this assignment of error that the trial court did not sufficiently consider the evidence pertaining to R.C. 3105.18(C)(1) and failed to take into account Ms. Easterling's need and his own inability to pay.
This case originally began as a complaint for legal separation, filed by Mr. Easterling on June 17, 1999. Ms. Easterling filed her answer and a counterclaim for divorce on July 7, 1999. In that filing, Ms. Easterling requested temporary and permanent spousal support. Additionally, she filed an affidavit of income and expenses, and asked for temporary child and spousal support orders. Subsequently, an agreed order was filed on July 8, 1999, providing that each parent would have the children on alternate weeks. However, no temporary support orders were made. The custody arrangements were later reviewed, and a further order was entered on August 17, 1999, designating the father's residence as primary for school purposes, and continuing the alternate week arrangement. Again, no support was ordered.
The divorce hearing was then held on February 3, 2000. At that time, the parties indicated to the court that Mr. Easterling would be the primary custodian for the children and that Ms. Easterling would pay child support. As we mentioned earlier, the support order was decreased by 10% to reflect slightly increased visitation time.
During her direct and cross-examination, Ms. Easterling did not mention spousal support. However, at the end of the cross-examination, the magistrate asked Ms. Easterling if she was requesting spousal support. Ms. Easterling responded that she had discussed the matter with her attorney. After some further discussion on the point, Ms. Easterling testified very briefly about her need for support. The magistrate then recommended five years spousal support at $500 per month. Subsequently, Mr. Easterling objected to the award, but the trial court agreed with the magistrate.
Concerning Mr. Easterling's first complaint about the support award, we think the magistrate's question was somewhat improper. Typically, "in the absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony," we presume that trial courts act impartiality by asking questions from the bench, to learn material facts or develop the truth. Jenkins v. Clark (1982), 7 Ohio App.3d 93. See also, Ohio R. Evid. 614(B) (allowing court to interrogate witnesses).
Although spousal support is a common issue in divorce cases, suggesting a legal claim not mentioned at trial by a party's own attorney comes perilously close to "prodding a witness to elicit partisan testimony." Specifically, if an issue has not even been raised at trial, there can be no material truth or fact to be developed on the point. We recognize that divorce hearings are generally conducted less formally than other civil trials. Nonetheless, trial courts should carefully avoid the appearance that they are suggesting claims or taking sides.
Mr. Easterling's second concern is over the merits of the support award. As we mentioned, Mr. Easterling contends that the trial court did not properly consider the statutory factors or the relative needs of the parties. In particular, Mr. Easterling focuses on these points: 1) the amount the court used for his income was based on overtime, not his base income; 2) his wife made more income than found by the court; 3) the court improperly found that the marital debt was divided equally when it was not; and 4) Ms. Easterling failed to give the court any evidence that spousal support was necessary to maintain her household.
At the outset, we note that trial courts have wide latitude in awarding spousal support and may be reversed only for abuse of discretion. Layne v. Layne (1992), 83 Ohio App.3d 559, 562. As we mentioned earlier, abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude. However, we have also said a number of times that decisions are unreasonable if they are not supported by a sound reasoning process. See, e.g., Canfarelli v. Canfarelli, (July 14, 2000), Montgomery App. No. 18145, unreported, p. 2, citing AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161. Furthermore, the exercise of discretion itself is governed by R.C.3105.18(C)(1), which says that courts must consider all the factors in the statute before awarding spousal support. See, e.g., Kaechele v. Kaechele (1988) 35 Ohio St.3d 93, paragraph one of the syllabus.
The factors in R.C. 3105.10(C)(1) include:
(a) The income of the parties, from all sources * * *;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
The basis for the spousal support award, according to the magistrate, was the respective income of the parties, the 15 year duration of the marriage, and the expenses of the parties, including the wife's obligation to pay child support to the husband [factors (a), (e), and possibly (i)]. In reviewing the matter, the trial court used a formula which took into account the respective incomes, spousal support, child support, tax consequences, and the expenses of raising the children [factors (a),(e), and (l)]. After inserting various amounts for these items, the trial court ended up with a net income to Mr. Easterling of $20,260 per year, versus a net income to Ms. Easterling of $18,267 per year (including spousal support). The trial court then agreed with the magistrate that spousal support of $500 per month for five years was proper.
After reviewing the record, we find the spousal support award unsupported by sound reasoning, in terms of amount and duration. Specifically, both the trial court and magistrate failed to take all the statutory factors into consideration. Moreover, the factors they did consider were based on inaccurate data.
Unfortunately for the parties, this divorce does not involve significant assets or incomes. As is often the case, both husband and wife will have a reduced standard of living as a result of the divorce. In fact, if one credits the affidavits of income and expenses filed, neither party will be able to meet expenses.
In assigning incomes, the trial court used a figure of $40,158, which is what Mr. Easterling earned during 1999. However, the court failed to consider Mr. Easterling's testimony that this amount included his base salary ($34,047), plus overtime and a higher pay rate for supervision. Mr. Easterling indicated that the supervision program had been discontinued and that his employer had also instituted a policy of no overtime. Accordingly, using the base salary would have been more appropriate. If the court still wanted to consider overtime, it could have averaged the prior three years' salaries. In this regard, Mr. Easterling's affidavit of income indicates that he received no overtime in 1997, and only $1,000 of overtime in 1998. Therefore, even averaging the salaries would have resulted in less income being attributed to Mr. Easterling.
More important, the court used an income figure for Ms. Easterling that was contradicted by her own testimony. The figure the court used for both spousal and child support was $18,000, and was based on Ms. Easterling's undocumented affidavit of income. In contrast, however, Ms. Easterling testified that she made $14.64 per hour at Emery Worldwide, and was working about 5 and a half hours a day, or around 30 hours per week. At that pay rate, Ms. Easterling's yearly income would have been about $22,838. Notably, Ms. Easterlng's account of her work hours was not supported by documents like pay stubs or W2 forms.
Mr. Easterling did submit pay records from Ms. Easterling's employer for the first 34 pay periods of 1999 (this included week 52 of 1998, which was apparently paid in 1999, and weeks one through 33 in 1999). According to these records, Ms. Easterling earned $15,250.43 for the 34 week period. This would result in a yearly total of about $23,324.18. Given Ms. Easterling's testimony that her work circumstances changed after the separation in June, 1999, a more fair estimate might be her income for the third quarter and fourth quarters of 1999. The records from Emery showed only the first 8 weeks of the third quarter. However, during that time, Ms. Easterling earned $4159.08, or an average of $519.88 per week. On a yearly basis, this would amount to about $27,034.02.
Instead of accepting the undocumented salary amount in Ms. Easterling's affidavit of income, the trial court should have required Ms. Easterling to submit her last pay stub for 1999, a W-2 for 1999, or a report from her employer regarding her pay for the third and fourth quarters of 1999. Since the hearing was held in February, 2000, those records would have been available and would have allowed a correct analysis of actual income. We are at a loss to understand why courts rely on undocumented statements in affidavits of income and expenses.
As a further matter, the trial court incorrectly considered the relative assets and liabilities of the parties. Mr. Easterling was, in fact, given the larger share of the parties' debt. Specifically, Ms. Easterling was ordered to pay one-half of a VISA bill in the total approximate amount of $7934.16 (meaning her share was about $3967.08). In addition to being responsible for a like amount, Mr. Easterling was solely responsible for all remaining credit card debt, including a First Bankcard Mastercard. The Mastercard was in both parties' names and had a balance at the time of the hearing of about $2505.85 (down from a $2,982.19 balance at the time of separation). As we will mention later, R.C. 3105.171 only requires equitable, and not necessarily equal allocation of debt. On the other hand, the fact that one party bears a substantially greater share of debt, and has limited resources, should be considered when spousal support is awarded.
As a final matter, we note that the court took no evidence on, and did not consider, numerous factors, including R.C. 3105.18
(C)(1)(b),(c),(f),(g),(h),(j), (k), and (m). Some of these factors may be inapplicable in a particular case. Unfortunately, the absence of a record on these points inhibits review and prevents us from finding that the trial court decision is supported by a sound reasoning process. In this regard, we note that the parties do have some obligation to ensure a complete record. On the other hand, since the magistrate initiated unsolicited questioning on the issue of spousal support, she should have continued and made sure the record contained enough information to support her decision. As was noted in Kaechele, the basis for the award must be set out in enough detail to let reviewing courts decide if the award is "fair, equitable and in accordance with law." 35 Ohio St.3d 93, at paragraph two of the syllabus. Accord, Schneider v. Schneider (1989)61 Ohio App.3d 164, 168 (remanding case for further findings because the record contained minimal evidence about factors that assisted the trial court).
Given the moderate incomes of the parties in this case, the large debt load, and the fact that the wife was working significantly less than full-time, even though she was not the custodial parent, the decision to award $500 spousal support per month for five years is not supported by a sound reasoning process. We have previously stressed that "a parent who is capable of being self-supporting may not indefinitely sit by and let the other parent bear a disproportionate share of expenses." In re Herron (July 7, 2000), Montgomery App. Nos. 18213, 18214, unreported, p. 9. A small amount of spousal support for a short period of time might be appropriate.
Based on the preceding discussion, the second assignment of error is sustained. This case will be remanded for further proceedings on the issue of spousal support. Specifically, the trial court needs to take more testimony and make a decision based on all the factors, bearing in mind the comments we have made in this opinion.
 III
In the third assignment of error, Mr. Easterling contends that the trial court abused its discretion by failing to equally allocate the marital debt among the parties and by unfairly awarding the marital property. Like the other issues we have considered, the standard of review is whether the trial court abused its discretion. Helton v. Helton (1996), 114 Ohio App.3d 683, 685 (citations omitted).
R.C. 3105.171(C)(1) does not specifically state that courts must equally divide debts and assets. Instead, the statute says that the division of property shall be equal, unless the court finds that an equal division is inequitable. In that event, the court may divide the property in an equitable manner.
Although debt is not explicitly mentioned, courts interpreting R.C.3105.171(C)(1) have found that the starting point for allocating marital property is an equal division of marital assets and debt. See, e.g., Braylock v. Braylock (Dec. 23, 1999), Cuyahoga App. No. 75459, unreported, p. 3; Ervin v. Ervin, (July 16, 1999), Mahoning App. 96 CA 177, unreported, p. 6; and Wannemacher v. Wannemacher (Dec. 23, 1998) Van Wert App. 15-98-13, unreported, p. 3. On the other hand, these courts also agree that the ultimate division does not have to be equal to be equitable.
Our own district has previously included debt within the meaning of "marital property." Lookabaugh v. Lookabaugh (Dec. 18, 1998), Champaign App. No. 98 CA 17, unreported, pp. 1-2 (Wolff, Young, and Brogan). In Lookabaugh, we noted, when reviewing an assignment of error related to allocation of marital debt, that R.C. 3105.171(C)(1) "provides that, in general, `the division of marital property shall be equal.'" Id. at 1. Later, we observed that the appellant "does not dispute that the debts were marital property." Id. at 2. We did stress that courts do not have to adhere to an equal division if it is not equitable. Id. at 1.
Similarly, in Mumma v. Mumma (March 24, 2000), Clark App. No. 99 CA 32, unreported (Young, Fain, and Grady), we considered whether the trial court had abused its discretion by failing to equally divide debt on farm equipment. In this regard, we noted that:
 R.C. § 3105.171(C)(1) requires equal division of marital property unless the court finds an equal division would be inequitable, in which case the court must divide the marital property equitably rather than equally. Steven claims that the court erred by failing to equally divide the debt on the farm equipment between him and Jill. He does not contend that the division of the debt as set forth by the trial court was inequitable, however. As noted above, the law does not require the court to divide marital debts and assets equally in all cases. Where an equal division is inequitable, the court must make an equitable division of the parties' debts and assets. As Steven has made no argument that the court's division of the farm equipment debt was inequitable, we find his claim meritless.
Id. at p. 5.
We took the same approach in Tester v. Tester (May 10, 1995), Darke App. No. 1361 CA, unreported (Young and Wolff concurring, Grady dissenting). In Tester, the trial court tried to make a perfectly equal division of property, but did not take into account the outstanding debt on a van. We held that this was an abuse of discretion. Id. at 5.
In dissent, Judge Grady argued that liabilities or negative assets are not included within the four categories of "marital property" in R.C.3105.171(A)(3). Id. at 5. Therefore, Judge Grady did not think the trial court had to offset the balance of the van debt as a "negative asset" and divide it between the parties Id.
However, R.C. 3105.171(A)(3)(a)(ii) does say that "marital property" means, among other things, "[a]ll interest that either or both of the spouses currently has in any real or personal property, * * * and that was acquired by either or both of the spouses during the marriage." Truthfully, we do not see how an interest in real property can be calculated without including the debt encumbering the asset — at least for purposes of determining the value, and hence, the division, of the property. Therefore, we will continue to use the approach we have previously adopted, which views equality as the starting point for dividing assets and debt. As Judge Grady correctly points out in his concurring opinion, this does not mean the court must allocate the debt to the party who receives the encumbered asset. While this would be the likely result in the majority of cases, it is not required by the statute.
After reviewing the record in the present case, we find no abuse of discretion in the allocation of debt. One of Mr. Easterling's major complaints is that the trial court did not require his wife to reimburse him for amounts he paid on marital debts between the date of separation and the final hearing. However, consistent with R.C. 3105.171(A)(2), the trial court construed the term "during the marriage" to mean the period of time from the date of marriage through the date of the final hearing. As a result, the court refused to consider amounts paid on marital obligations after separation, but before the final hearing, since these payments were made "during the marriage."
R.C. 3105.171(A)(2) "`creates a presumption that the proper date for termination of marriage is the date of the final divorce hearing.'" Bowen v. Bowen (1999), 132 Ohio App.3d 616, 630 (citation omitted). However, courts may select a different date, such as the date of separation, if the equities require. For example, an alternate date might be used if a long delay occurs between separation and the time of the divorce proceedings. See, e.g., Lark v. Lark (Nov. 19, 1999), Montgomery App. No. 17748, unreported, p. 1. Since no such delay existed in the present case, the trial court did not abuse its discretion by applying the statutory presumption.
Mr. Easterling additionally challenges the trial court's decision to award him the larger share of the marital debt. According to the record, both sides were required to equally split the debt on one credit card and on medical bills for their daughter. Mr. Easterling was then required to pay the remaining debt. Most of this debt was for small amounts already paid on credit cards or was for items used by Mr. Easterling. For example, $264.38 was owed to BOC Gases for payment on welding tanks.
The primary item for which Mr. Easterling was solely responsible was the debt on a credit card that we have previously discussed, i.e., the $2505.85 owed to First Bankcard Mastercard. Under the circumstances, and given some disparity in the parties' incomes, we see no abuse of discretion in requiring Mr. Easterling to pay a larger share of the debt. Accordingly, this part of the third assignment of error is without merit.
Mr. Easterling also says the trial court erred in the actual distribution of marital property. The parties had only personal property, and offered conflicting testimony about who had various items. In fact, both sides accused each other of improperly taking personal property. The court's solution was to order property distributed per Loc.R. 4.48 of the Court of Common Pleas of Montgomery County, Domestic Relations Division. Under this rule, the parties retain separate items brought into the marriage, the custodial parent receives certain items used by the minor children, and the remaining items are distributed by agreement. If no agreement can be reached, the parties may choose one of three methods for distributing property. These methods include: 1) a coin toss, followed by alternating choices by each side until all items have been selected; 2) plaintiff's preparation of two lists of items in dispute, and defendant's selection of one list; or 3) after appraisal of the disputed items, plaintiff has first choice of buying the defendant out by paying one-half the value of the items. If the plaintiff refuses to buy, the defendant is given the buy-out option.
We see no problem with this method of distribution. As has been noted, trial courts "`cannot be expected to value every piece of furniture, lawn equipment, and other personal property accumulated during a marriage.'" Schrader v. Schrader, (Jan. 21, 1998), Medina App. No 2664-M, unreported, p. 4 (citation omitted). This would be particularly true in situations like the present, where both sides claimed property was missing, and offered essentially no evidence about the value of any particular item of personal property. We would urge the parties to start co-operating with each other, to avoid incurring further attorney fees that they can ill afford.
Based on the preceding discussion, the third assignment of error is overruled.
 IV
In the fourth assignment of error, Mr. Easterling claims the trial court abused its discretion in awarding a tax exemption for one of the children to Ms. Easterling. This assignment of error has no merit, since the parties specifically agreed at the hearing that each parent would take one of the children as a tax exemption. See, Transcript, p. 8.
 V.
Finally, the fifth assignment of error is a general catch-all, in that the trial court is alleged to have "continually abused its discretion by assessing the case in an unfair and inequitable and unconscionable way." To support this assignment of error, Mr. Easterling focuses on all the matters previously discussed, and argues that they show an unreasonable, arbitrary, and unconscionable attitude on the part of the trial court. We disagree. Except for the spousal support award, we found no abuse of discretion by the trial court. Accordingly, the fifth assignment of error is overruled.
In light of the preceding discussion, the first, third, fourth, and fifth assignments of error are overruled. The second assignment of error is sustained, and this matter should be remanded to the trial court for additional testimony on the factors set out in R.C. 3105.18(C)(1), and for a decision on the appropriate amount of spousal support, if any, which may be appropriate. Accordingly, the judgment of the trial court is Affirmed in part and Reversed in part and is Remanded to the trial court for further proceedings consistent with this opinion.
 __________________ BROGAN, J.
FAIN, J., concurs.