OPINION
Defendant-appellant, Youell Blair, appeals from the judgment entry/decree of divorce of the Marion County Court of Common Pleas issued on June 11, 2001.
The parties to this appeal, Tina and Youell Blair, were married on October 11, 1984, and no children were born as issue of the marriage although Mrs. Blair has children from a prior relationship. On November 12, 1999, Mrs. Blair filed a complaint for legal separation. Mr. Blair filed an answer and counterclaim for divorce, alleging gross neglect of duty, extreme cruelty, and incompatibility. The trial court conducted a hearing in this matter on May 9, 2001, and filed its judgment entry/decree of divorce on June 11, 2001. This appeal followed, and Mr. Blair now asserts four assignments of error with the trial court's judgment.
 THE COURT ERRED IN DETERMINING THAT THE PROPERTY LOCATED AT 575 NORTH PROSPECT STREET WAS THE SEPARATE PROPERTY OF WIFE.
 THE COURT ERRED IN CONCLUDING THAT THE BUSINESS KNOWN AS BLAIR'S RIDING STABLES WAS MARITAL PROPERTY.
 THE COURT ERRED IN DETERMINING THE VALUE OF THE HORSES, TACK AND EQUIPMENT AND ASSIGNING THAT TO DEFENDANT-APPELLANT AS THE VALUE OF THE BUSINESS.
 THE COURT ERRED IN DETERMINING THE MARITAL VALUE OF THE HILLMAN ROAD RESIDENCE.
In granting a divorce, a trial court is required to "determine what constitutes the parties' marital property and what constitutes their separate property." Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159
(citing R.C. § 3105.171(B)). Ohio law defines "separate property" in pertinent part as "all real and personal property and any interest in real or personal property that is found by the court to be any of the following: . . . [a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii). "Marital property" is also defined by Ohio law. This definition in relevant part states: "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]" R.C. 3105.171(A)(3)(a)(iii).
Because making such a determination involves a factual inquiry, a reviewing court must examine the trial court's decision "under the standard of manifest weight of the evidence." Barkley,119 Ohio App.3d at 159 (citations omitted). Thus, "[a] judgment of a trial court will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence."Id. This highly deferential standard of review requires the affirmation of the judgment of a trial court if there is "even `some' evidence" to support the finding of that court. Id. In addition, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony."Id. (citing In re Jane Doe I (1991), 57 Ohio St.3d 135).
After classifying the property as marital or separate, the trial court generally awards each spouse his or her separate property and then divides the marital property equally "unless an equal division would be inequitable." Barkley, 119 Ohio App.3d at 159 (citing R.C. §3105.171(C), (D)). A trial court is granted wide discretion in determining how to fashion an equitable division according to the circumstances of each case before it. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218. Thus, absent an abuse of discretion, "[a]n appellate court should not reverse the judgment of the trial court[.]"Barkley, 119 Ohio App.3d at 159 (citing Martin v. Martin (1985),18 Ohio St.3d 292, 294-295). In Blakemore, the Ohio Supreme Court held that a trial court abuses its discretion if its "attitude is unreasonable, arbitrary or unconscionable." Blakemore,5 Ohio St.3d at 219 (citations omitted).
 First Assignment of Error
For the first assignment of error, Mr. Blair contends that the trial court erred in finding that the property owned by the parties and located on Prospect Street (hereinafter "the Prospect property") was the separate property of Mrs. Blair. The undisputed evidence at trial revealed that the couple purchased the Prospect property during their marriage. Then, at some point prior to January 7, 1998, Mrs. Blair filed for divorce from Mr. Blair. According to Mr. Blair, he signed an agreement on January 7, 1998, relinquishing any interest in the Prospect property in an effort to reconcile with Mrs. Blair. This document was submitted into evidence as Plaintiff's Exhibit 9 but did not reflect a date of signing. Attached to this exhibit was a partial copy of a quit-claim deed executed by Mr. Blair, making Mrs. Blair the sole owner of the Prospect property. Mrs. Blair also testified that she was the sole owner of this property. The agreement between the parties contained, in relevant part, the following language:
 Husband and Wife, in consideration of the mutual dismissal of their pending divorce proceeding * * * and the execution of a quit claim deed from Husband to Wife contemporaneously herewith, it is the agreement of the parties that the real estate * * * shall be the extra-marital property of Wife in the event that a certain loan to be obtained by the parties from the Marion Bank in the approximate sum of Ten Thousand Dollars ($10,000.00) is paid off in approximately 3 years from the date hereof.
While this agreement is not dated, witnessed, or notarized, Mr. Blair acknowledged that he signed the agreement and was aware of its terms. In addition, Mrs. Blair submitted documentation, which went undisputed by Mr. Blair, that the loan mentioned in the agreement was paid in full in May 2000.
Revised Code section 3103.05 states that "[a] husband or wife may enter into any engagement or transaction with the other, or with any other person, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other." In addition, R.C.3103.06 provides that "[a] husband and wife cannot, by any contract with each other, alter their legal relations, except that they may agree to an immediate separation and make provisions for the support of either of them and their children during the separation." The Ohio Supreme Court has previously determined that the term legal relations "embraces more than `marital [relations.]'" DuBois v. Coen (1919), 100 Ohio St. 17,24. In DuBois, the Court stated that "it would seem that the Legislature intended that there should be no alteration either of marital or property relations in the nature of expectancies, except in case of immediate separation." Id.
Recently, the Fourth District Court of Appeals addressed an issue quite similar to the case sub judice. See King v. King (March 20, 2000), Adams App. No. 99 CA 680, unreported, 2000 WL 326131. In King, the wife claimed that she and her husband agreed that the farm, which the couple purchased during the marriage, would be her separate property. Id. However, unlike the present case, the alleged agreement was oral. Id. In addition, the wife did not indicate whether any such agreement occurred before or during the marriage. Id. In determining that the trial court did not err in refusing to consider the existence of a verbal agreement as to the farm, the appellate court stated the following: "If the agreement was postnuptial, we have no need to analyze the court's application of the statute of frauds. R.C. 3103.06 prohibits postnuptial contracts, unaccompanied by a separation agreement, that alter the parties' legal rights." Id. (citing DuBois, 100 Ohio St. at 24; Brewsaughv. Brewsaugh (1984), 23 Ohio Misc.2d 19, 20).
In the case sub judice, the parties entered into a written agreement in an effort to convert otherwise marital property, R.C. 3105.171(A)(3)(a)(i), into separate property. However, this contract was not accompanied by a separation agreement as R.C. 3103.06 requires. On the contrary, the undisputed evidence revealed that the parties entered this agreement in an effort to reconcile and that reconciliation did occur. In fact, Mrs. Blair did not file for separation until some twenty-one months later. Moreover, the language of the agreement acknowledges that the agreement is "in consideration of the mutual dismissal of their pending divorce proceeding." Therefore, the trial court's classification of the Prospect property as the separate property of Mrs. Blair was in contravention of the dictates of R.C. 3103.06, and thus, in error. Accordingly, the first assignment of error is sustained.
 Second Assignment of Error
In his second assignment of error, Mr. Blair contends that the trial court incorrectly concluded that the business known as Blair's Riding Stables (hereinafter "the stables") was marital property. The trial court found that this business was marital property, in accordance with R.C. 3105.171(A)(3)(a) because Mrs. Blair "materially participated in the business operations." However, the trial court did not specify upon which sub-section, (i), (ii), (iii), or (iv), it was relying.
Both sub-section (i) and (ii) provide that the property or interest being classified be "acquired by either or both of the spouses during the marriage" in order to be considered marital property. R.C.3105.171(A)(3)(a)(i), (ii). As previously noted, sub-section (iii) defines marital property as all income and appreciation on separate property occurring during the marriage "due to the labor, monetary, or in-kind contribution of either or both of the spouses[.]" R.C.3105.171(A)(3)(a)(iii). Sub-section (iv) is irrelevant to the case subjudice because it involves participant accounts, a type of property not at issue in the present controversy.
The evidence before the trial court revealed that the stables were purchased by Mr. Blair in 1970, and were in full operation prior to the 1984 marriage of the parties. In fact, further testimony revealed that Mrs. Blair actually met her husband when she came to the stables to go horseback riding. Based upon this undisputed evidence, the trial court could only reasonably have found that the business was acquired prior to the marriage rather than during the marriage. Thus, sub-sections (i) and (ii) would not apply. In addition, the trial court did not find that the appreciation, if any, of the business was marital property, but rather, it found that the business in its entirety was marital property. Hence, the trial court could not have relied upon sub-section (iii) as its basis for classifying the stables as marital property. Therefore, the trial court could only determine that the stables were the separate property of Mr. Blair, as required by R.C. 3105.171(A)(6)(a)(ii).
However, the separate property of one spouse can be converted "into marital property by the spouse's own actions." Barkley,119 Ohio App.3d at 160. "The most commonly recognized method of effectuating this change is through an inter vivos gift." Id. The requirements of a gift are that the owner have the present donative intent "to transfer the title and right of possession of the particular property to the donee then and there" and a delivery "of the gift to the extent practical * * * with relinquishment of ownership, dominion and control over it." Helton v.Helton (1996), 114 Ohio App.3d 683, 685 (citing Bolles v. Toledo TrustCo. (1946), 132 Ohio St. 21, paragraph one of the syllabus). The donee must show that the gift was made by clear and convincing evidence.Barkley, 119 Ohio App.3d at 158.
The testimony revealed that after the marriage Mrs. Blair began to learn about the business and eventually aided her husband in running the business by engaging in the day-to-day operations such as taking paying customers out on the riding trails and buying, selling, and registering horses. In addition, the couple's 1998 tax return, specifically Schedule C of Form 1040, admitted into evidence as Plaintiff's Exhibit 15, lists the stables as a sole proprietorship and lists Mrs. Blair as the sole proprietor. Mrs. Blair also testified that she had been listed as the sole proprietor since the late 1980's when Mr. Blair became disabled and started receiving a disability check. However, the trial court did not find that Mr. Blair converted his separate property into marital property and there was no testimony that Mr. Blair ever had the intent to give his wife an interest in the stables or to convert the stables into a marital asset. The listing of Mrs. Blair as the sole proprietor of the business on the 1998 tax return, without more, is insufficient to find a gift, which thereby converts the business into marital property. Therefore, the classification of the stables as marital property is against the manifest weight of the evidence, and the second assignment of error is sustained.
This Court recognizes that any appreciation value of the business due to the efforts of either party during the marriage is marital property. See R.C. 3105.171(A)(3)(a)(iii). However, the evidence before the court did not demonstrate the value of the stables prior to the marriage. The only evidence given regarding the value of the stables was its present value. Mr. Blair, as well as other witnesses, testified that the number of riders had decreased during the marriage. Mrs. Blair testified that the number of riders did, in fact, decrease but that the rates had increased. However, this testimony does not provide sufficient information to enable this court to determine the appreciation value, if any, of the stables. Accordingly, on remand the trial court should determine the appreciation value of the business, if any, and then distribute any amount determined to the parties in accordance with Title 31 of the Ohio Revised Code.
 Third Assignment of Error
In his third assignment of error, Mr. Blair maintains that the trial court erred in its determination of the value of the business. This Court begins its analysis of this assignment of error by noting that
 [t]he trial court enjoys broad discretion in determining the value of a marital asset * * * [but] this discretion is not limitless. Our task on appeal is not to require the adoption of any particular method of valuation, but to determine whether, based on all the relevant facts and circumstances, the court abused its discretion in arriving at a value.
James v. James (1995), 101 Ohio App.3d 668, 681, see also Martin v.Martin (June 6, 1995), Allen App. No. 1-94-82, unreported, 1995 WL 347909 (citing Moro v. Moro (1990), 68 Ohio App.3d 630, 637).
In the case sub judice, both parties submitted appraisals of the farm equipment and tack, as well as an appraisal of the horses. After determining that the stables were marital property, the trial court found that Mrs. Blair's submitted appraisal as to the equipment and tack, $10,965.00, provided a more complete and accurate accounting and, thus, used this figure as the value of the equipment and tack. The court found both appraisals of the horses to be credible but also found that they were very diverse in that neither appraised all of the same horses. Accordingly, the court averaged the two figures in order to place a value on the horses, a value of $40,230.00. Finally, the trial court determined that the value of the stables was $48,695.00, the total of the value of the equipment and tack plus the value of the horses, less $2,500.00 (representing the value of a horse that the trial court awarded to Mrs. Blair). The court then awarded the business to Mr. Blair, but ordered that he pay Mrs. Blair one-half of the value of the business, having previously determined that the stables were marital property (as discussed in the second assignment of error, supra).
Mr. Blair asserts that separating the value of the horses from the business constitutes error as the stables cannot operate without the horses. In addition, he maintains that adding the individual value of the horses, tack, and equipment ignores "economic reality." Mr. Blair's argument misconstrues the trial court's findings. The trial court determined the value of the business by determining the total value of the business' assets, not by separating the value of the horses from the business. This Court does not find that determining the value of the business in this manner was an abuse of the court's discretion.
In the alternative, Mr. Blair contends that the trial court erred in relying upon the appraisal of Mrs. Blair's appraiser because the appraisal accounted for deceased animals, non-marital animals, and was not based upon personal knowledge. As previously discussed, both parties presented appraisals for the horses. Mrs. Blair did so through documentation, as well as direct testimony from the woman who conducted the appraisal, Nicole Long. Mr. Blair submitted a written appraisal conducted by M.E. Hatmaker, but Mr. Hatmaker did not testify at trial. Ms. Long testified that she did not view all of the horses, that some of the horses were probably there before 1984, and that at least one of the appraised horses, Rex, was now deceased.
However, the trial court did not value the horses at the total at which Ms. Long appraised them. Rather, the trial court took the average of Ms. Long's appraisal and Mr. Hatmaker's appraisal in an effort to accommodate for the variations in their appraisal methods. This Court does not find that to do was an abuse of discretion. Moreover, such error, if any, was harmless because upon remand for the determination of any appreciation value of the business during the marriage, both parties will be able to present evidence of the current value of the stables, as well as the value of the stables prior to the marriage. Therefore, the third assignment of error is overruled.
 Fourth Assignment of Error
Finally, Mr. Blair contends in his fourth assignment of error that the trial court erred in determining the marital portion of the value of the marital residence on Hillman Road. Mr. Blair asserts that the value of the house appreciated during the marriage due to the parties' efforts but that the value of the land to which it was attached appreciated without the efforts of either party. In support of this argument, Mr. Blair relies upon the fact that the County Auditor places a value on land separate from the value placed upon the buildings attached to the land for tax purposes.
While certainly creative, this Court declines to adopt a "tax-valuation" formula for appraisal of a marital residence in domestic relations cases and holds that in valuing a marital residence, the land upon which it sits is included in the valuation. Thus, the trial court correctly included both the value of the house and the value of the land in determining the appreciation value of the Hillman Road residence. Therefore, the fourth assignment of error is overruled.
Based on the foregoing, the first and second assignment of error are sustained and the third and fourth assignments of error are overruled. Accordingly, the judgment of the Court of Common Pleas of Marion County, Ohio, is affirmed in part and reversed in part and the matter is remanded to that court for further disposition in accordance with this opinion.
Judgment affirmed in part and reversed in part and cause remanded.
HADLEY and WALTERS, JJ., concur.